*Viking Technologies, LLC v. Broadtech, LLC et al. (2:20-CV-357)*
*Viking Technologies, LLC v. Asurion, LLC et al., (2:20-CV-358)*
*Viking Technologies, LLC v. Clover Technologies Group, LLC et al. (2:20-CV-359)*

# Defendants' Claim Construction

**Judge Gilstrap**
**Tuesday, June 15, 2021**

# "biasing"

| Claim Language | Defendants' Construction | Plaintiff's Construction |
|---|---|---|
| **"biasing"** (All Asserted Claims) | **"applying a force to the cutting device/wire to hold it in a given position"** | **"applying a force to the cutting device/wire"** |

**Plaintiff defined "biasing" in prosecution to mean "applying a force to the cutting device/wire to hold it in a given position."**

ISSUE:
- Does "biasing" mean only "applying a force" or also the force holds the wire "in a given position."



**1**. A method of removing a protective glass top surface from a display unit having a glass top, an electronic display portion, and a planar intermediate layer therebetween, the method comprising the steps of:

fixing the display unit in a carriage with the intermediate layer being exposed on all sides;

aligning a cutting device in a coplanar relationship with the intermediate layer;

==biasing the cutting device in the intermediate layer adjacent the electronic display portion and away from the glass;==

driving the cutting device into the intermediate layer while moving the cutting device and display unit relative to each other along an axis generally orthogonal to the cutting device; and

advancing the cutting device into the intermediate layer to separate the glass top from the electronic display portion.

'537 Patent, Cl. 1.



The preferred method of separating the electronic display unit (the only expensive and valuable component) for reuse is to bias the wire or blade against/adjacent or close to the plane adjacent the electronic display, i.e. the surface of the electronic display and maintaining cutting element in a coplanar relationship with that plane adjacent the electronic display. This can be accomplished with a wire by keeping it taut and aligning it carefully to maintain the coplanar relationship. A slight bias of the wire against the electronic display can be helpful in keeping it as far from the glass layer as possible to prevent encountering/snagging of the glass layer **26**. Snagging is a risk if the glass is broken,

'537 Patent, 6:10-21.



## Applicant clarified "biasing":

> Those of ordinary skill in the art readily understand that the term "biasing" requires the application of some force, in this mechanical engineering art:
>
> www.dictionaryofengineering.com/definition/bias.html
>
> bias: The force applied to a relay to hold it in a given position

Ex. E. 1/20/16
Applicant Br at 4-5.

## Examiner adopts Applicant's definition:



> "plus any additional amount as desired by an operator."  It appears that Sampica et al. is teaching that the cutting element can be biased adjacent the electronic display portion and away from the glass, especially in view of paragraph 0040 which teaches that one layer of the laminated substrate assembly may contain an amount of adhesive not removed by the elongated cutting member.  This would occur if the cutting element were biased adjacent one layer of the laminated substrate using the customary and ordinary definition of the application of some force in the context of a machine and mechanical manipulation of articles or the definition in the on line dictionary of engineering: The force applied to a relay to hold it in a given position.

Ex. F. 8/26/16 Non-Final
Office Action at 7.

6

## Decision on Appeal:

The Examiner states that the "customary and ordinary definition" of "bias," "in the context of a machine and mechanical manipulation of articles," is "the application of some force." Ans. 3; Office Action dated Sept. 2, 2016, at 3 ("Act."). The Examiner also states that "the definition in the on line dictionary of engineering" is "[t]he force applied to a relay to hold it in a given position." Ans. 3; Act. 6. In the Appeal Brief, the Appellant does not contest those definitions.[3] *See generally* App. Br.

_____

[3] In the Reply Brief, the Appellant agrees that "the term 'force', as a possible synonym [for 'bias'], is not inconsistent with the use of the word in this application." Reply Br. 5. However, the Appellant notes for the first time that it is unclear what the "on line dictionary of engineering" referenced by the Examiner is. *Id.* at 4. We agree that it is unclear to what dictionary the Examiner is referring. However, given the general agreement between the Examiner and the Appellant that "bias" refers to force, the Examiner's stated definition does not appear to be a source of material dispute.

Decision on Appeal at 3.

# "in the intermediate layer"

# "in the intermediate layer"

| Claim Language | Defendants' Construction | Plaintiff's Construction |
|---|---|---|
| "in the intermediate layer" (All Asserted Claims) | "after the cutting device/wire enters the intermediate layer" | No construction necessary |

**Plaintiff agrees that "biasing" only takes place after the wire enters the intermediate layer, but says no construction necessary**

ISSUE:

- Construction is necessary to clarify "biasing" does not take place prior to the wire entering the intermediate layer

**Reply Brief for Appellant:**

The foregoing is a truly fantastical interpretation of the disclosure of this application, and is a thinly veiled attempt to import the patent examiner's misunderstanding of the disclosure into the claims; indeed, what the patent examiner hypothesizes about paragraph [0051] wouldn't function, because one couldn't get the cutting device into the intermediate layer, because it would be biased in a direction away from that layer, too. What is clear, however, is that the patent examiner has again ignored the words of the claims. All the pending claims include the step "biasing the cutting [device/wire] _in the intermediate layer_ . . . away from the glass". So, the biasing step is performed _in the intermediate layer_. The patent examiner stated, "One of ordinary skill in the art upon reviewing Appellant's entire disclosure would not come to the conclusion that the method claims limit inducing a bias to the cutting member until after it enters the adhesive layer." Quite to the contrary: the claims specifically say that the biasing step is performed after the cutting member has entered the adhesive/intermediate layer, because that is how the step is performed "in the intermediate layer", and the claim makes no sense unless it is.

Plaintiff's Reply Brief (Dkt. No. 100) at 9.

**Decision on Appeal:**

The Appellant interprets claim 39 as requiring that the cutting device first be placed "in the intermediate layer," and subsequently lowered "away from the glass," to achieve the recited "biasing" step. *E.g.*, App. Br. 19 ("Sampica does not describe setting [the position of its cutting member] after the cutting element is in the adhesive layer, which is the only way biasing can be performed in this context; [Sampica's] calibration assemblies would have to locate the cutting member in the adhesive layer, and then move the calibration assemblies up or down in order to induce a bias—a disclosure which is plainly not in Sampica."); Reply Br. 9 ("[T]he biasing step is performed **in the intermediate layer**. . . . [T]he claims specifically say that the biasing step is performed after the cutting member has entered the adhesive / intermediate layer, because that is how the step is performed 'in the intermediate layer', and the claim makes no sense unless it is." (emphasis in original)). In other words, the Appellant asserts that biasing must literally occur "in the intermediate layer," as recited by the claim, and that biasing the cutting device next to the intermediate layer or relative to the intermediate layer before the cutting device enters the intermediate layer does not fall within the scope of the claim. App. Br. 19; Reply Br. 9.

Decision on Appeal at 5.

"intermediate layer"

1. A method of removing a protective glass top surface from a display unit having a glass top, an electronic display portion, and an intermediate layer therebetween, the display unit defining an axis extending along said intermediate layer, the method comprising the steps of:

fixing the display unit in a carriage with the intermediate layer being exposed on all sides;

aligning a cutting device in a coplanar relationship with the intermediate layer;

biasing the cutting device in the intermediate layer adjacent the electronic display portion and away from the glass,

driving the cutting device into the intermediate layer while moving the cutting device and display unit relative to each other along a diagonal direction relative to said display unit axis;

advancing the cutting device into the intermediate layer to separate the glass top from the electronic display portion.

'953 Patent, Cl. 1.

# Intermediate Layer

| Claim Language | Defendants' Construction | Plaintiff's Construction |
|---|---|---|
| **"intermediate layer"** (All Asserted Claims) | **"the material between the upper and lower surfaces of the electronic display portion and the glass layer where the thickness of the layer is defined by the distance between those two surfaces"** | **No construction necessary** |

**ISSUE:**

- Is the intermediate layer everything between the glass and electronic display?



in the inventive concepts disclosed herein. The intermediate layer is bounded by upper and lower interface planes which are adjacent the electronic display portion and the glass layer and distance between those planes is the thickness of the layer. Upper and lower are terms which can be interchange-

'953 Patent, 5:49-53.



Protective Glass Cover
adhesive
Polarizer
adhesive
Electronic Display
Device Chassis

Defendants' Claim
Construction Tutorial.



1. A method of removing a protective glass top surface from a display unit having a glass top, an electronic display portion, and an intermediate layer therebetween, the display unit defining an axis extending along said intermediate layer, the method comprising the steps of:

fixing the display unit in a carriage with the intermediate layer being exposed on all sides;

aligning a cutting device in a coplanar relationship with the intermediate layer;

biasing the cutting device in the intermediate layer adjacent the electronic display portion and away

. . .

'953 Patent, Cl. 1.



Defendants' Claim
Construction Tutorial.

In addressing this term, Defendants once again ignore the language of the claims. As previously demonstrated, the claims themselves define the "display unit" and the "intermediate layer." (Opening CC Br., D.I. 94 at 8–9.) For example, the "intermediate layer" of claim 1 of the '953 Patent is defined as the portion of the "display unit" between the "glass top" and the "display portion." ('953 Patent, D.I. 94-1 at 9:46–48.) Defendants seek to redefine the claim because the

Plaintiff's Reply Br. (Dkt. No. 100) at 8.

1. A method of removing a protective glass top surface from a display unit having a glass top, an electronic display portion, and an intermediate layer therebetween, the display unit defining an axis extending along said intermediate layer, the method comprising the steps of:
  fixing the display unit in a carriage with the intermediate layer being exposed on all sides;
  aligning a cutting device in a coplanar relationship with the intermediate layer;
  biasing the cutting device in the intermediate layer adjacent the electronic display portion and away
    . . .

'953 Patent, Cl. 1.

# "coplanar" terms

1. A method of removing a protective glass top surface from a display unit having a glass top, an electronic display portion, and an intermediate layer therebetween, the display unit defining an axis extending along said intermediate layer, the method comprising the steps of:

fixing the display unit in a carriage with the intermediate layer being exposed on all sides;

aligning a cutting device in a coplanar relationship with the intermediate layer;

biasing the cutting device in the intermediate layer adjacent the electronic display portion and away from the glass,

driving the cutting device into the intermediate layer while moving the cutting device and display unit relative to each other along a diagonal direction relative to said display unit axis;

advancing the cutting device into the intermediate layer to separate the glass top from the electronic display portion.

# Disputed Issues

| Claim Language | Defendants' Construction | Plaintiff's Construction |
|---|---|---|
| **"coplanar"** (All Asserted Claims) | **"in the same plane"** | **"in a same plane"** |

| Claim Language | Defendants' Construction | Plaintiff's Construction |
|---|---|---|
| **"aligning a cutting device/wire in a coplanar relationship with the intermediate layer"** (All Asserted Claims) | **Indefinite** | **Not indefinite** |

**ISSUE:**
- Plaintiff's construction is inconsistent with basic geometry
- Plaintiffs admit they aren't using terms in a geometric way





US 2010/0199818 to Lee from the '537 Patent File History (e.g., 2014-10-08 Non-Final Rejection).



US 2010/0199818 to Lee from the 537 Patent File History (e.g., 2014-10-08 Non-Final Rejection).



**Fig. 1**

'953 Patent, Fig. 1.



1. A method of removing a protective glass top surface from a display unit having a glass top, an electronic display portion, and an intermediate layer therebetween, the display unit defining an axis extending along said intermediate layer, the method comprising the steps of:

  fixing the display unit in a carriage with the intermediate layer being exposed on all sides;

  aligning a cutting device in a coplanar relationship with the intermediate layer;

  biasing the cutting device in the intermediate layer adjacent the electronic display portion and away from the glass,

  driving the cutting device into the intermediate layer while moving the cutting device and display unit relative to each other along a diagonal direction relative to said display unit axis;

  advancing the cutting device into the intermediate layer to separate the glass top from the electronic display portion.

'953 Patent, Cl. 1.



**Fig. 7**

'953 Patent, Fig. 7.



**3 "Coplanar" Points On A Plane**



**Lines AB and CD are "Coplanar**

# What Is Not Coplanar



**A Point On Different Plane (Point C)
Is Not Coplanar With Points A & B**



**Parallel Planes;
Points A & B Are <u>Not</u> Coplanar With Points C & D**



**2 Intersecting Planes;
Points A & B Are <u>Not</u> "Coplanar" With Points C & D**



Fig. 3

# Figure 7 of the '953 Patent



953 Patent, Fig. 7

Glass

Intermediate Layer

Electronic
Display



Glass

Intermediate Layer

Electronic Display



98 at 18.)  Defendants' argument ignores all context.  While a geometry professor may not use the phrase "coplanar" to describe three-dimensional objects, that has nothing to do with how the term is used in the Asserted Patents.  By Defendants' logic all patent claims using the term "coplanar," "parallel," and "perpendicular" would be indefinite because the geometric definition of each of those terms is inapplicable to three-dimensional objects.  Here, the Asserted Patents use the phrase "coplanar relationship" in a real-world context that is readily understandable.   Courts, including

Plaintiff's Reply Br. (Dkt. No. 100) at 12.



Glass

Intermediate Layer

Electronic Display



Glass

Intermediate Layer

Electronic Display



Glass

Intermediate Layer

Electronic Display

aligning a cutting device in a ~~coplanar~~ relationship with the intermediate layer;

'953 Patent, Cl. 1.

# The Cases Support Defendants' Position

"Based on the above, this Court concludes that the terms "coplanar" and "noncoplanar" refer to whether or not ==*all* of the hub legs lie in **the** same plane=="

"[A]ll of the hub legs lie within ==**the** same plane, or are coplanar=="

*Graco Children's Prod., Inc. v. Regalo Int'l LLC*, 2000 WL 1123260, at *5 (E.D. Pa. Aug. 8, 2000) (emphasis added).



'710 Patent, Fig. 4 from *Waner v. Ford Motor Co.*, 331 F.3d 851, 854 (Fed. Cir. 2003).

**Red and Orange Are Not Coplanar**



The Blue Regions Are Coplanar

'003 Patent, Fig. 8 from *Kothmann & Kothmann, Inc. v. Trinity Indus., Inc.*, 287 F. Supp. 2d 699, 726 (S.D. Tex. 2002).